# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

TWIST AERO, LLC,                      :   Case No. 3:19-cv-00337
                                   :
       Plaintiff,                      :   District Judge Thomas M. Rose
                                   :   Magistrate Judge Sharon L. Ovington
vs.                                  :
                                   :
B GSE GROUP, LLC,                    :
                                   :
       Defendant.                      :
                                   :

## REPORT AND RECOMMENDATIONS[1]

Plaintiff Twist Aero, LLC is an Ohio limited liability company located in Jamestown, Ohio. It manufactures and distributes worldwide aviation-related products and services, including, for instance, preconditioned air units and a hose management system that connects preconditioned air units to aircraft. Together these, and additional Ground Support Equipment, maintain comfortable air temperatures on aircraft while they are on the ground between flights.

Defendant B GSE Group, LLC sells aviation-related products. It is a North Carolina limited liability company located in Huntersville, North Carolina.

Twist Aero's Complaint advances three theories of liability against Defendant: (1) false advertising, (2) deceptive trade practices, and (3) breach of contract.

Defendant contends that this Court lacks personal jurisdiction over it and that, as a

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

result, Twist Aero's Complaint is subject to dismissal without prejudice or transfer of venue to the U.S. District Court for the Western District of North Carolina.

## I.

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a complaint for lack of personal jurisdiction. Twist Aero bears the burden of demonstrating personal jurisdiction exists over Defendant. *See Youn v. Track, Inc*., 324 F.3d 409, 417 (6th Cir. 2003). Because no evidentiary hearing has been held concerning personal jurisdiction over Defendant, Twist Aero "'need only make a prima facie showing of jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996)). Twist Aero can accomplish this by "'establishing with reasonable particularity sufficient contacts between …'" Defendant and Ohio to support jurisdiction. *Id*. (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987)).

Where the parties' asserted facts diverge, the Court declines to consider Defendant's contrary version. *See id*. And, without an evidentiary hearing, the Court "consider[s] pleadings and affidavits 'in a light most favorable to [Twist Aero] ….'" *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting, in part, *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

## II.

Twist Aero alleges that Defendant has transacted business with Twist Aero in Ohio since 2014. (Doc. #1, ¶7; Doc. #23, *PageID* #209).

**Kali Smith's Declaration**

Kali Smith is Twist Aero's Account Manager and Vice President of Business Unit Development. She refers to an email string from March 2014 attached to her Declaration. (Doc. #23, Smith's Decl. ¶7; *PageID* #s 231-32). Ashley Bullerdick (Defendant's owner at that time) sent the first email in this string on February 28, 2014. Her email's subject was "F 35 diesel air unit contract." *Id.* at 232. She discussed Defendant's need for a supplier of aircraft related products and provided "basic information" about the products Defendant needed. *Id.* Twist Aero's email reply on March 4, 2014, from Bob Maynard Director of Sales and Product Development, expressed eager interest in learning "more about the scope of this particular project ...." *Id.* Bullerdick responded the next day by email providing much more information. *Id.* at 231.

Smith states that in or around the fall of 2014, Defendant began seeking quotes from Twist Aero for preconditioned air units (PCAs). *Id.*, Smith's Decl. ¶8. In early February 2015, Defendant issued a purchase order to Twist Aero for a 75-ton PCA unit and two 120-ton PCA unit plus related parts and services. *Id.* at ¶9 and *PageID* #s 233-34. Smith also refers to Exhibit 3 attached to her Declaration. This document is dated September 2, 2015 and relates to F35 military sales involving Twist Aero and Defendant. *Id.* at ¶11 and *PageID* #235. Smith explains, "Defendant B_GSE initiated the conversation leading to the parties' execution of Smith Dec. Ex. 3[,] and Defendant B_GSE prepared the first version of Exhibit 2.[2]" *Id.* at ¶12 (footnote added).

---

[2] This appears to be a typographical error. It makes more sense that Smith meant to refer to Exhibit 3, the

Smith next discusses the Lemoore Project. It arose in the fall of 2016 involving PCA units for F35 aircraft hangers located at Naval Air Station Lemoore, in Lemoore, California. Smith reports that Defendant "asked Twist Aero to quote prices to manufacture…." these PCA units, and "[t]he Lemoore Project required specially manufactured PCA units designed to meet unique requirements imposed by the United States armed services." *Id*. at ¶s 13-14. "Twist Aero developed high performance PCA units in Ohio to be sold by Defendant B_GSE [and] used in F35 hangers in California," according to Smith. *Id*. at ¶15.

Smith also refers to the Cleveland Project, which required "ongoing communications and coordination of activities in Ohio." *Id*. at ¶16. Her search of Twist's business record found over 30 email messages between Defendant and Twist Aero employees focused on the Cleveland project between January 31, 2017 and July 27, 2017. More information about the Cleveland Project appears below. *See infra*., Dinnen's Decl.

The last two paragraphs of Smith's Declaration identify her Exhibit 4 as a copy of a July 28, 2017 email string between Twist Aero employees and Bryan Bullerdick, one of Defendant's founding members. Smith says, "The initial correspondence from Mr. Bullerdick in Smith Dec. Ex. 4 provided feedback on bids incorporating Twist Aero components (PCAs…,) that Defendant B_GSE had submitted and includes Mr. Bullerdick's thoughts on how to ensure that future bids from Defendant B_GSE that

September 2, 2014 document mentioned earlier in this paragraph, rather than to Exhibit 2, the purchase order referred to in earlier paragraphs.

include Twist Aero components would continue to be competitive." *Id.* at ¶18.

## Tammy Dinnen

Tammy Dinnen is an employee of Twist, Inc.[3] She is also an officer of Twist Aero and serves as its Accounting Manager. She explains, in her Declaration, "Twist Aero manufactures its PCA units and its Boom-Air® hose retriever systems solely in Greene County, Ohio." (Doc. #23, *PageID* #238, ¶11). For more information about Boom-Air® hose retriever systems, see Doc. #1, ¶20(a)-(l).

Twist Aero does not keep an inventory of PCAs on hand; it specially manufactures each PCA for a specific customer or project. *Id.* at ¶12. As example of this is seen in a purchase order Defendant issued to Twist Aero on or about September 23, 2016 (P.O. No. 2331) in connection with the Lemoore Project. The purchase order asked Twist Aero to provide 7 high-pressure PCA units, a master controller, start-up and training ("commissioning"), and floor stands. *Id.* at ¶13 and *PageID* #241. Dinnen says, "The price for the Lemoore Project exceeded Five Hundred Thousand Dollars ($500,000.00). The Lemoore Project required Twist to manufacture, among other things, PCA units within the State of Ohio, ship the units to California, and send Twist Aero employees to commission the units for active service." *Id.* at ¶14.

Twist Aero completed the entire scope of work for the Lemoore Project in March 2019. *Id.* at ¶15. On or around March 20, 2019, Twist, Inc. issued an invoice concerning work performed on the Lemoore Project. The sales amount stated in this invoice is

---

[3] Twist, Inc., an Ohio corporation, was reorganized at some point leading to the creation of Plaintiff Twist Aero, LLC. *See* Doc. #23, *PageID* #229, ¶7; *see also Doc.* #17, *PageID* #155, ¶2. Both entities still exist.

$23,380. *Id.* at *PageID* #255. Dinnen states that this "invoice remains unpaid." *Id.*, *PageID* #240, ¶25. This unpaid invoice is the basis for Twist Aero's breach of contract claim against Defendant. (Doc. #1, ¶s 110-17).

Dinnen refers to additional email exchanges and different projects that Twist Aero worked on for Defendant. She explains that one email from Bryan Bullerdick to Twist Aero relates "to [Defendant] projects with Twist Aero, and dates for shipments from Twist Aero in Jamestown, Ohio to Cleveland, Ohio; Lemoore Station, California; Maryland (BWI), and Chicago, Illinois—all at Defendant B_GSE's request." (Doc. #23, *PageID* #239, ¶20 and *PageID* #244). And Dinnen states, "In addition to B_GSE Group projects, Defendant B_GSE asked Twist Aero to rent warehouse space in Greene County, Ohio for Defendant B_GSE Group to store parts, equipment, or other supplies in connection with a project in Chicago." *Id.*, *PageID* #239, ¶21. Attached to Dinnen's Declaration are an email, Twist invoices, and Defendant's payments for use of warehouse space in Greene County, Ohio. *Id.*, *PageID* #s 239-40, ¶s 21-22 and *PageID* #s 245-53.

Dinnen declares, "Between 2015 and 2018, Defendant … submitted approximately thirteen (13) separate orders to Twist Aero worth approximately $4.2 Million in total." *Id.*, *PageID* #240, ¶24.

## Bryan Bullerdick

Bryan Bullerdick is currently the President of Defendant B GSE Group, LLC. He states in his affidavit that B GSE is a North Carolina Limited Liability Company with its principal place of business in Huntersville, North Carolina. He further states that B GSE has no office in Ohio, has never had an office in Ohio, is not licensed to do business in

Ohio, and does not direct its business operations from Ohio, does no banking in Ohio. Bullerdick avers that Defendant has no clients in Ohio and has never provided services of any kind in Ohio. Defendant "maintains a website accessible to the public. No orders can be taken through this website," according to Bullerdick. (Doc. #17, *PageID* #15, ¶9).

Bullerdick explains the origin of its relationship with Twist Aero as foreign to Ohio:

> The relationship of B GSE Group, LLC and Twist Aero, LLC did not arise in Ohio, but instead at a trade show in Las Vegas, Nevada. I first learned of Twist Aero, LLC at this trade show when its representative expressed interest to me in doing business with B GSE Group, LLC. Twist Aero, LLC expressed interest in expanding its territory outside Ohio.

*Id*. at ¶10. Bullerdick notes that he "only visited Ohio on two occasions…," both in response to Twist Aero's invitation "and solely because Twist Aero…, was located in Ohio." *Id*. at ¶11.

Bullerdick says that no contract negotiations between Twist Aero and Defendant occurred in Ohio; Defendant never bought, sold, or distributed a Boom-Air® hose retriever system either from Twist Aero or otherwise; and he has never seen the Boom-Air® hose retriever system in operation or being manufactured or installed. *Id*. at ¶s 12, 14-15. Perhaps most significantly, Bullerdick explains:

> No exclusive contractual relationship exists between Twist Aero, LLC and B GSE Group, LLC. Instead, B GSE Group merely submits a purchase order to it, who upon acceptance, manufactures and supplies any ordered goods or services for a third-party customer or client of B GSE Group, LLC. Twist Aero, LLC was paid when the third-party customer paid B GSE Group, LLC. Any purchase orders were submitted only via email or mail.

*Id*. at ¶13.

**Scott Dils**

Scott Dils is currently, and has been for nine years, Defendant's Vice President of Sales and Marketing. Dils does not live in Ohio and has never lived here. He visited Ohio once for business purposes, namely, to physically inspect the status of a PCA and an aircraft service pit. He alleges that the manufacture of these things was delayed by Twist Aero. His visit to Ohio, he says, "was solely because Twist Aero, LLC was located in Ohio." *Id.*, *PageID* #153, ¶2.

**The Patent Case in North Carolina**

Twist, Inc. filed a case against B GSE Group, LLC—the same Defendant in the instant case—in the U.S. District Court for the Western Division of North Carolina, Charlotte Division, *Twist, Inc., et al. v. B GSE Group, LLC*, Case No. 3:19cv00583. Twist, Inc. and another Plaintiff claim in that case that Defendant infringed two patents that "generally disclose devices and methods for supplying conditioned air for heating and cooling an aircraft while it is stationary and on the ground with a supply hose that extends and retracts from a stationary protective container connected to the conditioned air source." (Doc. #17, *PageID* #157, ¶11).

According to Twist, Inc.'s Complaint, the allegedly infringing product that Defendant B GSE Group advertised and offered for sale was the COOL JET PCAir Hose Retriever. Twist, Inc. asserts that the COOL JET PCAir Hose Retriever is identical to the hose management system—the ATES hose management system (named after an Italian manufacturer ATES)—imported and installed at the Houston-Bush International Airport in Houston, Texas. Upon notice from Twist, Inc., ATES agreed to cease and desist its

business activities in the United States involving the infringing ATES hose management system. *Id.*, *PageID* #159-60, ¶16. Twist, Inc. claims that B GSE Group's the COOL JET PCAir Hose Retriever is identical, or nearly so, to the patent infringing ATES hose management system.

## The Present Case

In the present case, Plaintiff Twist Aero claims that Defendant, while selling its good and services in interstate commerce, made false and misleading statements about its own goods and services and about Twist Aero's goods and services, including the Boom-Air® hose management system. This claim arises under the Lanham Act, given the Complaint's reference to interstate commerce along with its earlier citation to 15 U.S.C. § 1125(a)(1) as the basis for subject matter jurisdiction. *See* Doc. #1, ¶11; *see also* Doc. #23, *PageID* #219 (acknowledging that subject matter jurisdiction in this case "stems from a federal question ….").

Twist Aero's second claim alleges that Defendant disparaged Twist Aero's goods and services by making false representations about those goods and services, "including, without limitation, the statements that Plaintiff Twist's hose retriever system 'must be mounted outside and substantially aft of the lift columns." (Doc. #1, *PageID* #18, ¶107). This claim apparently arises under Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq.*

Twist Aero's remaining claim, as mentioned above, *supra*, (discussing Dinnen's Declaration) asserts that Defendant breached the contract created by its purchase order on or about September 23, 2016. Twist Aero alleges that it agreed to provide, and in fact

provided, the services sought by the purchase order. And despite sending an invoice to Defendant charging $23,380.00 for said services, Defendant has failed and refused to pay for these services. This breach of contract claim arises under Ohio common law.

## III.

## General and Specific Jurisdiction

Defendant contends that this Court lacks both general and specific personal jurisdiction over it. The first contention leads to a ready answer: General jurisdiction is absent. Defendant is a North Carolina limited liability company, its principal place of business is in North Carolina, it has no office in Ohio, and it does not direct its business operations from within Ohio. The contacts Defendant has with Ohio—accepting Twist Aero's description of them—are not so "'continuous and systematic' as to render [Defendant] essentially at home in [Ohio]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Without this presence in Ohio, the Court's authority to exercise general jurisdiction does not apply to Defendant. *Id*.; *see Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) ("General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" (citation omitted)).

Defendant's second argument—the absence of specific jurisdiction—requires more discussion but leads to an equally certain answer: Specific jurisdiction is present.

"In order for a court to exercise specific jurisdiction over a claim, there

must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, — U.S. —, 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017) (internal quotation marks omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Thus, "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough." *Id.*

*Stehle v. Venture Logistics*, LLC, 2020 WL 127707, at *6 (S.D. Ohio 2020) (Rose, DJ).

Because Twist Aero, asserts subject matter jurisdiction based on a federal question arising under the Lanham Act, *supra*, § II, specific personal jurisdiction exists over Defendant if it "'is amenable to service of process under the [Ohio's] state's long-arm statute and if the exercise of personal jurisdiction would not deny [Defendant] due process.'" *Bird,* 289 F.3d at 871 (citation omitted).

**Ohio's Long-Arm Statute**

Ohio's long-arm statute permits this Court to exercise personal jurisdiction over Defendant if it "acts directly or by an agent, as to a cause of action arising from [its] … (1) Transacting any business in this state …." Ohio Rev. Code § 2307.382(A). The Ohio Supreme Court characterizes the phrase "transacting any business" as "very broadly worded." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990). "To 'transact' business means 'to prosecute negotiations; to carry on business; to have dealings.'" *Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506, 511 (6th Cir. 2006) (emphasis omitted) (quoting *Kentucky Oaks Mall,* 53 Ohio St.3d at 75). "Personal jurisdiction does not require physical presence in the forum state." *Business & Quality Integration, LLC v. Ratcliff*, 2015 WL 4610338, at *4 (S.D. Ohio 2015) (Rose, DJ)

(citing *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236 (1994)).

Defendant is silent about whether it transacted any business in Ohio related to Twist Aero's claims. Twist Aero has advanced sufficient facts to make a prima facie showing that Defendant transacted business in Ohio, triggering Ohio's long-arm statute. Defendant's owner (in 2014) Ashley Bullerdick reached out by email to Twist Aero in 2014 to discussing its need for a manufacturer or supplier like Twist Aero to provide it with certain aviation-related products. (Doc. #23, *PageID* #232). Ashley Bullerdick proposed entering a long-term business relationship with Twist Aero. She explained, "This project is a huge opportunity with tremendous opportunities that go well beyond this contract. When discussing this project how the shape of the opportunity will end up for years to come…." Id. at 231. She noted, "[W]hatever we do here is going to kind of tie us to doing it again and again…. Our consulting work has led us to this opportunity and if this is the future of the military and we have one of the first contracts we want it to go right and we want to repeat this contract over and over again for the next twenty-five years." *Id.*

These efforts to negotiate and establish a repetitive, long-term contractual relationship with Twist Aero reveal that it had at least begun to transact business with Twist Aero in Ohio. *Kroger Co.,* 437 F.3d at 511 ("To 'transact' business means 'to prosecute negotiations ….'"). When these efforts are considered together with purchase orders Defendant sent to Twist Aero in 2015, 2016 (for the Lemoore Project), and 2017 (for the Cleveland Project), plus the fact that between 2015 and 2018, Defendant sent approximately thirteen purchase orders to Twist Aero worth approximately $4.2 million

dollars, *see id.*, *PageID* #240, ¶24, Defendant carried on business or had business dealing with Twist Aero in Ohio that amounted to transacting any business in Ohio in satisfaction of Ohio's long-arm statute. *Kroger Co.,* 437 F.3d at 511 (transacting any business in Ohio means to "carry on business; to have dealings.'"). And, Defendant rented warehouse space from Twist Aero in Greene County, Ohio, a further indication that it reached into Ohio to transact business with Twist Aero.

**Due Process**

Defendant contends, "Regardless of whether Ohio's long-arm statute is satisfied, Twist must prove constitutional due process requirements are met for personal jurisdiction to exist." (Doc. #26, *PageID* #290). This is partially correct because the exercise of specific personal "jurisdiction must accord with Due Process," *Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012), and because the Ohio's long-arm statute's reach is not the spitting image of the Due Process Clause's reach. *Bird*, 289 F.3d at 871 ("Ohio's long-arm statute is not coterminous with federal constitutional limits."). This is partially incorrect because, without an evidentiary hearing, Twist Aero need not prove the due-process requirements are met but may instead make a prima facie showing to surmount Defendant's Rule 12(b)(2) Motion. *See Neogen Corp.*, 282 F.3d at 887.

The broad due-process issue is whether Twist Aero has made a prima facie showing that Defendant has sufficient minimum contacts with Ohio "so as not to offend traditional notions of fair play and substantial justice." *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The applicable test—one the parties agree upon—is the oft-quoted triple header from

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*See Gerber*, 649 F.3d at 518.

Defendant contends, "Twist Aero conclusorily alleges only that: 'Defendant B GSE has transacted business in Ohio since 2014 by entering into purchase orders and distributing products manufactured or installed by Twist Aero.'… Communicating with a party in Ohio via email and telephone does not constitute purposeful availment." (Doc. #17, *PageID* #137 (citations omitted)). But Twist Aero alleges Defendant did much more than this.

Defendant purposely availed itself of the privilege of acting in Ohio by reaching into Ohio with emails beginning in 2014 and purchase orders beginning in 2015 that continued for at least several years. Defendant's email in 2014 set a goal of establishing a long-term and ongoing contractual relationship with Twist Aero for the manufacture of aviation-related equipment in Ohio and the provision of commissioning services to be provided by Twist Aero's Ohio employees. Viewed in Twist Aero's favor, Defendant sought to establish a series of contracts with Twist Aero "over and over again for the next 25 years." (Doc. #23, *PageID* #231). On at least one occasion, Defendant purchased, and Twist Aero manufactured, aviation-related products for use in Ohio, specifically at the Cleveland-Hopkins International Airport. And Defendant submitted to Twist Aero

approximately 13 purchase orders adding up to approximately 4.2 million dollars of aviation-related equipment that Twist Aero manufactured for it in Ohio. *Id*. at 240, ¶24. These constitute more than random, fortuitous, or attenuated contacts by Twist Aero with Ohio but instead amount to purposeful availment. *Cf. Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio."); *cf. also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." (citation omitted)).

As to the second specific-jurisdiction question, Twist Aero must make a prima facie showing that the operative facts of the case arise from Defendant's contacts with Ohio. *Calphalon,* 228 F.3d at 723. This "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Bird*, 289 F.3d at 875 (citations omitted).

Twist Aero's federal claim for false advertising (under the Lanham Act) and its claim for Deceptive Trade Practices (under Ohio) arise from marketing or advertising on Defendant's website. The operative facts Twist Aero alleges in support of these claims begin with Defendant's business model through which Defendants takes credit for engineering, designing, or manufacturing products of other entities. According to Twist

Aero, Defendant rebrands and sells these products.  *See* Doc. #1, ¶s 31-43.  Twist Aero further alleges that Defendant began marketing a hose management system in early 2019 on its website, using video, an animated slide, a pdf version of the slideshow, and a brochure.  "Within the foregoing advertising pieces…, Defendant B_GSE compares itself and its hose management system to Twist and the Boom-Air® System."  *Id*. at ¶68.  Twist Aero asserts that Defendant makes false and disparaging statements about the Boom-Air® System.  The Complaint details these allegations illustrated with diagrams and photographs.  *Id*. at ¶s 72-90.  Twist Aero maintains that Defendant's false advertising and statements, and deceptive trade practices cause Twist Aero to suffer lost sales and reputational injury.  (Doc. #23, *PageID* #223).  And, according to Twist Aero, Defendant B_GSE is also sourcing parts for its hose retriever from at least one … Ohio-based supplier (MQ Automation)."  *Id*.  The breach of contract claim Twist Aero advances is based on the operative facts discussed above concerning purchase order (P.O. No. 2331) in September 2013 that remains unpaid in the amount of $23,380.00.  Construing Twist Aero's facts in its favor, it presents a prima facie case that its claims arise from Defendant's false, misleading, and injurious marketing or advertising on its website concerning Twist Aero's Boom-Air® System reached into Ohio by targeting the Boom-Air® System, which Twist Aero manufactures in Ohio.  Under Twist Aero's facts, Defendant caused it economic harm and reputational injury to an Ohio business in Ohio.  Its factual allegations therefore show Defendant's substantial connection with Ohio and that its claims arise from operative facts that occurred in Ohio.  *Cf. Neogen Corp.*, 282 F.3d at 892 ("Construing the facts in the light most favorable to Neogen…, it is possible

that NGS's activities in Michigan have caused economic injury to Neogen. Such a causal connection satisfies the 'arising from' requirement of *Mohasco*."). And although Defendant contends that Twist Aero's breach of contract claim is based on services Twist Aero performed outside Ohio, this does not negate the facts that services allegedly arose from the purchase order Defendant sent into Ohio, from the parties' business transaction in Ohio, and from Defendant's alleged failure to make payment in Ohio for the services. This constitutes a prima facie showing that Defendant's activities in Ohio gave rise to Twist Aero's breach of contract claim. *Cf. Intera Corp. v. Henderson*, 428 F.3d 605, 617-18 (6th Cir. 2005) ("personal jurisdiction may exist over a defendant although he is not physically present in the forum if he 'purposefully directs communications into the forum, and those communications form the 'heart' of the cause of action.'" (citation omitted)).

Because the first two factors of specific jurisdiction—purposeful availment and claims arising from Defendant's contacts with Ohio—are present in this case, "a presumption arises that the exercise of jurisdiction would be 'reasonable' under the third factor." *Scotts Co. v. Aventis S.A*., 145 F. App'x 109, 115 (6th Cir. 2005) (citing *Third Nat'l Bank v. WEDGE Group Inc.,* 882 F.2d 1087, 1092 (6th Cir. 1989)). Ohio doubtlessly has an interest in resolving a suit brought by an Ohio resident against defendant, who has purposefully availed itself of acting in and allegedly causing significant financial and reputational consequences to an Ohio business in Ohio. *See id*.; *see also Cole v. Mileti*, 133 F.3d at 436 (when purposefully availment and cause of action arising from in-state contacts are present, "we presume the specific assertion of personal

jurisdiction was proper."); *Alahverdian v. Nemelka*, 3:15cv60, 2015 WL 5004886, at *7 (S.D. Ohio 2015) (Rose, DJ).

Accordingly, for all the above reasons, Twist Aero has made a prima facie demonstration that Defendant is subject to this Court's exercise of specific personal jurisdiction.

## IV.

Defendant contends that if the Court has personal jurisdiction over it, venue of this case should be transferred to the U.S. District Court in the Western District of North Carolina. Twist Aero disagrees. It favors leaving venue here, in the Southern District of Ohio, because it resides here, it chose this forum, Ohio is equally or substantially more convenient for witnesses than North Carolina, the "clearance rate" for cases in this District is higher than in the Western District of North Carolina, and Ohio residents have an interest in providing redress for Twist Aero—an Ohio resident, manufacturer, and employer.

The applicable venue statute, 28 U.S.C. § 1404(a), provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Defendant, the moving party, bears the burden of demonstrating that a change of venue is warranted. *See Centerville ALF, Inc. v. Balanced Care Corp,* 197 F.Supp.2d 1039, 1049 (S.D. Ohio 2002) (Rice, Chief DJ) (and cases cited therein); *see also Pearle Vision, Inc. v. N.J. Eyes, Inc.,* 1:08cv00190, 2009 WL 73727 at *8 (S.D. Ohio 2009) (Dlott, Chief DJ).

## Venue in North Carolina

Defendant correctly asserts that this case could have been brought against it in the Western Division of North Carolina. The U.S. District Court there could exercise subject matter jurisdiction over the federal question Twist Aero raises under the Lanham Act. The Court in the Western District of North Carolina could likewise exercise either supplemental or diversity jurisdiction over Twist Aero's state-law claims. *See* Doc. #17, *PageID* #145, n. 13 (and Exhibits cited therein). General personal jurisdiction exists over Defendant in North Carolina where Defendant is incorporated and where its principal place of business exists. Defendant, moreover, points out that it has not objected to the exercise of personal jurisdiction over Twist, Inc.'s the patent-infringement case brought against it in North Carolina. Indeed, it has admitted in that case it has "substantial and continuous contacts with [the Western District of North Carolina] judicial district through its business activities, through which it has a regular established place of business." (Doc. #17, Exh. C, ¶4, admitted by Answer, Exh. D. ¶4).

Venue of this case is proper in the Western Division of North Carolina. Defendant's personal place of business is in Huntersville, North Carolina, which is in Mecklenburg County. The Western District of North Carolina encompasses Mecklenburg County. *See* 28 U.S.C. §113(c). Because venue is proper in a "judicial district in which any defendant resides…," 28 U.S.C. § 1391(b)(1), venue of this action is proper in the Western District of North Carolina.

## Convenience and Justice

A garden full of factors apply under §1404(a):

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991). Once a court analyses these factors, exercise of the Court's discretion to transfer is proper if fairness and practicality strongly favor the forum to which transfer is sought. *Mead Data Central Inc. v. West Pub. Co.*, 679 F. Supp. 1455, 1457 (S.D. Ohio 1987).

*Prime Time Marketing Management, Inc. v. DirectBuy, Inc.*, 3:07cv00387, 2008 WL 11452553, at *2 (S.D. Ohio 2008) (Rose, D.J.); *see Stehle*, 2020 WL 127707, at *9.

Twist Aero's choice of forum in the Southern District of Ohio is a factor strongly favoring maintaining venue here. "'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (citation omitted). However, the patent case Twist, Inc. chose to file in North Carolina pulls venue like gravity towards that location. *See Nationwide Affordable Hous'g Fund 4, LLC v. Urban 8 Danville Corp.*, 1:19cv 1848, 2019 WL 5802532, at *4 (S.D. Ohio 2019) (Morrison, DJ) (similar cases pending in another district "weighs heavily in favor of transfer."). The allegedly infringing product in the patent case, Defendant's COOL JET PCAir Hose Retriever, is at issue in the instant case and forms the basis of at least some of Twist Aero's false advertising claims. *See Doc #1, PageID #6*, ¶s 37-38 and Exhibits 2, 5, 6-7. The convenience to the parties favors locating the present case in North Carolina where the parties are already involved in litigation. As to the convenience of the witnesses, it is likely true that at least some of Twist Aero's witnesses will be needed in the case in

North Carolina. This factor therefore favors North Carolina where Defendant's witnesses will likewise appear in the patent case pending there.

The cost of obtaining willing witnesses favors North Carolina due to the presence of Defendant's witnesses there and the fact that Twist Aero's witnesses in Ohio will likely be willing to appear in North Carolina without compulsion. One of Twist Aero's attorneys in also involved as "of counsel" in the North Carolina case. This together with transferring venue of this case to North Carolina makes in more likely that both cases can be efficiently resolved by simultaneous mediation and settlement in North Carolina.

Accordingly, for the above reasons, the balance of factors strongly favors a transfer of venue of this case to the Western District of North Carolina and, consequently, the transfer is warranted under § 1404(a) by convenience, economy, judicial efficiency, and in the interest of justice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant B-GSE Group LLC's Motion for Judgment Dismissing Complaint for Lack of Jurisdiction (Doc. #17) be DENIED;

2. Defendant B-GSE Group LLC's Alternative Motion to Transfer Venue to the U.S. District Court for the Western District of North Carolina (Doc. #17) be GRANTED;

3. The Clerk of Court be directed to transfer this case to the U.S. District Court for the Western District of North Carolina, Charlotte Division; and

4. The case be terminated on the docket of this Court.


April 14, 2020                                   *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).